Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
Telephone 602.229.5200

Jeffrey H. Wolf (#011361)
Jeffrey.wolf@quarles.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vital Pharmaceuticals, Inc., d/b/a Bang Energy,<br><br>Plaintiff,<br><br>vs.<br><br>PepsiCo, Inc.,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff, Vital Pharmaceuticals, Inc. ("VPX"), for its complaint against PepsiCo, Inc. ("PepsiCo"), alleges as follows:

**PARTIES**

1. VPX is a Florida corporation with its principal place of business located at 1600 North Park Drive, Weston, Florida.

2. PepsiCo is a North Carolina corporation with its principal place of business located at 700 Andersen Hill Road, Purchase, New York.

**JURISDICTION AND VENUE**

3. This is an action for relief pursuant to Section 9.11(c) of the Parties' Distribution Agreement which provides, in pertinent part, that VPX, as the non-breaching party to the Distribution Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Furthermore, VPX is empowered by the same Section of the Distribution Agreement to commence a civil action ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ hat is owned by VPX.  *See* Exhibit A, Distribution Agreement.

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The parties to this action are diverse: VPX is a citizen of Florida and PepsiCo is a citizen of New York and North Carolina. The amount in controversy exclusive of interest and costs exceeds the sum of $75,000.

5. The Court has personal jurisdiction over PepsiCo because it was engaged, and continues to engage, in solicitation or service activities in the State of Arizona and because products, materials, or things processed, serviced, or manufactured by PepsiCo are used or consumed in the State of Arizona in the ordinary course of commerce, trade, or use. This Court also has general personal jurisdiction over PepsiCo because it is engaged in substantial and continuous activity within the State of Arizona.

6. Venue is proper in this Court because, pursuant to 28 U.S.C. § 1391, PepsiCo resides in Maricopa County, Arizona because it is subject to personal jurisdiction there.

## THE FACTS

7. VPX is one of the leading manufacturers of fitness-focused nutritional supplements and energy drinks in the world. Its BANG® energy drink is among the most popular brands in the energy drink segment.

8. Following the introduction of the BANG® brand, VPX built a very high functioning distribution network. In late 2019 and early 2020, due to the popularity of the BANG® brand, and in recognition of the opportunity to further advance and expand the BANG® brand to the top of the highly competitive energy drink marketplace, VPX wanted to ensure that its distribution network was best in class. VPX engaged in discussions with PepsiCo, which represented that it had capabilities to advance the BANG® brand beyond VPX's current high-functioning network and encouraged VPX to switch to PepsiCo's distribution network.

9. In March 2020, in reliance on PepsiCo's assertions of its capabilities and projections for advancement of the BANG® brand, VPX entered into its Distribution Agreement with PepsiCo, whereby PepsiCo would transition over a period of two years to

1  become VPX's exclusive United States distributor of certain products: ready-to-drink
2  BANG®-branded energy products (the ███████████). Distribution Agreement at 4.
3    10.   The Distribution Agreement obligated PepsiCo to ████
4  ████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████ Distribution Agreement, §
6  2.3.
7    11.   VPX and PepsiCo also executed a Channel Transition Agreement (the
8  "Transition Agreement"), which ████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████
10 ████████████████████████████████ See Exhibit B, Transition Agreement.
11   12.  ████████████████████████████████████████████████████
12 ████ the Transition Agreement ██████████████████████████████████████
13 ████████████████████████████████████████████████████████████████████
14 ██████████████████████████ Transition Agreement, § 8.
15   13.   Likewise, the Parties understood and contemplated that it would be
16 impossible to transition an entire distribution network for a brand as large and as popular as
17 BANG® overnight if the Parties were ever to part ways.  To accommodate the logistical
18 realities attendant to termination of the Distribution Agreement, the parties agreed that,
19 ████████████████████████████████████████████████████████████████████
20 ████████████████████████ Distribution Agreement, § 3.2.
21   14.   The Parties contemplated and inserted a requirement that ████
22 ████████████████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████████████
25 Distribution Agreement, § 2.3.
26   15.   To be equitable, the Distribution Agreement further provided ████
27 ████████████████████████████████████████████████████████████████████
28 ████████████████████████████████████████████████████████████████████

1 ███████████████████████████████████████ *See* Distribution Agreement § 3.2.(a)(i)(d).
2 ████████████████████████████████████████████████████████████████████████
3 ████████████████████████████████████████████████████████████████████████
4 ██████████████████████████████████████████████████ Distribution Agreement,
5 § 3.2(a)(i)(d) (emphasis added).

6       16.    Despite VPX's efforts and good faith approach to the relationship, PepsiCo
7 repeatedly failed to perform, failed to address VPX management's performance concerns,
8 and failed to advance the BANG® brand. Instead, PepsiCo was more concerned with
9 pushing VPX to further transition its existing network, beyond what was required of VPX
10 in the Channel Transition Agreement.

11       17.    Rather than model commercially reasonable efforts, PepsiCo's distribution
12 strategy resulted in *lost* market share for the ███████████.

13       18.    After months of underperformance and unaddressed or inadequately
14 addressed concerns, it was apparent to VPX that PepsiCo did not have capabilities that it
15 represented.

16       19.    In light of PepsiCo's persistent inability (or unwillingness) to adequately
17 invest resources to distribute ████████████ VPX elected to terminate the Distribution
18 Agreement without cause on October 23, 2020.

19       20.    Following VPX's provision of the notice of termination, PepsiCo has altered
20 its performance. While PepsiCo was not satisfying its obligation to exercise commercially
21 reasonable efforts prior to the notice of termination, it has intentionally reduced its
22 performance in multiple material ways following its receipt of the notice of termination,
23 exacerbating its failure to exercise commercially reasonable efforts.

24       21.    More specifically, PepsiCo has ████████████████████████████
25 ████████████████████████████ described in the parties' Distribution Agreement as a
26 ██████████████████████████ s described as ████████████████████████████
27 ████████████████████████████████████████████████████████████████████████
28 ████████████████████████████████████████████████████████████

22. In the Distribution Agreement's Schedule 6, PepsiCo committed to VPX that it would ███████████████████████████████████████████████████████████

23. Among the many services improperly withheld by PepsiCo, despite its continued insistence upon the payment of a ███████████ it has significantly altered the ██████ or communications necessary for VPX to communicate with PepsiCo regarding distribution issues. That is, PepsiCo completely ceased communications with VPX at the unit manager level.

24. Additionally, PepsiCo has not reported any results in the independent store business channel, which is ████████████████████████ Distribution Agreement. While PepsiCo's performance in this area always fell short of commercially reasonable efforts, it has fallen to zero since the notice of termination. PepsiCo withholding this critical information prevents VPX from monitoring and achieving business goals for this entire distribution channel and from forecasting and meeting manufacturing and supply chain needs and changes.

25. Third, PepsiCo has ceased reporting on inventory in the distribution channel following the notice of termination. This failure materially impacts VPX's supply chain production. Cutting off VPX's visibility into the distribution channel handcuffs VPX's ability to make crucial manufacturing and supply chain allocation decisions.

26. Fourth, PepsiCo has ceased providing—and specifically refuses to provide—daily store-level data feeds. PepsiCo's refusal to provide this data prevents VPX from knowing whether specific retail outlets are receiving the agreed volume and mix of products. Prior to the notice of termination, PepsiCo provided this information.

27. All of the foregoing failures are irreparably harming VPX's goodwill in the marketplace.

28.     The Distribution Agreement provides ███████████████████████████████████████████████████████████████████████████ Distribution Agreement, in the event where, as here, PepsiCo has failed ████████████████████████████████████████████.

29.     Despite the repeated efforts of VPX personnel to engage PepsiCo in negotiations to adjust the ██████████ PepsiCo has steadfastly refused ████████████████████████████████████████████████████.

30.     Instead of negotiating in good faith to adjust the ████████ commensurate with █████████████████████ PepsiCo has threatened to take actions against VPX that would effectively prevent VPX from ensuring that its BANG® energy products reach the market.

31.     For example, on March 7, 2022, PepsiCo's Jennifer Tousignant alerted VPX of its intention to charge VPX what she described as a "Mixing Center Fee" in the amount of $6,907,778.  The Distribution Agreement does not obligate VPX to pay anything described or known as a Mixing Center Fee.  The phrase is nothing more than an extra-contractual fictional term, likely used internally by PepsiCo in place of the Distribution Agreement's ██████████

32.     According to Ms. Tousignant, the consequences to VPX for failing to pay the Mixing Center Fee were extreme.  That is, PepsiCo would no longer distribute BANG energy products through its nationwide network of warehouses, thereby requiring VPX to incur the extraordinary expense of transporting its products directly to PepsiCo's hundreds of independent and company-owned distributors.

33.     More specifically, Ms. Tousignant stated: "If you do not align to the continuation of the [mixing center] fee, PepsiCo will begin the process to shift to the alternative of direct ship to all PBC DSD barns and Franchise Bottler locations.  This would result in PBC holding Bang orders for product purchases from VPX beginning this week and working down our Mixing Center volumes as DSD locations and Bottlers place orders with PBC."

34.     Under the coercion and duress of PepsiCo, VPX had no choice other than to permit PepsiCo to electronically debit its so-called Mixing Center Fee as an illegitimate set-off to invoices for BANG® energy products ordered and received earlier by PepsiCo.

## COUNT I

## DECLARATORY AND INJUNCTIVE RELIEF

35.     VPX re-alleges and incorporates by reference the allegations contained in the preceding Paragraphs.

36.     VPX is without question entitled to receive certain services from PepsiCo, identified in the Distribution Agreement, in exchange for ▮▮▮▮▮▮▮▮▮▮▮.

37.     The Distribution Agreement provides a specific framework to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ where, as here, PepsiCo has failed to ▮▮▮▮▮▮▮▮▮▮▮.

38.     Instead of meeting with VPX to renegotiate ▮▮▮▮▮▮▮▮▮▮ PepsiCo has instead threatened to prohibit VPX from distributing its BANG Energy drinks through its mixing centers to the detriment of VPX.

39.     Accordingly, there is an actual controversy between VPX and PepsiCo regarding PepsiCo's unjustified and baseless assertions with respect to its continued entitlement to earlier ▮▮▮▮▮▮▮▮ paid and to the future payment of the same.

40.     VPX seeks from the Court a declaration of the parties' respective rights as described in the Distribution Agreement and particularly Schedule 6 wherein ▮▮▮▮▮▮▮▮▮▮▮▮ is described.

41.     A declaration is necessary and appropriate in order that VPX may be enabled to continue supplying its products to retail outlets and thereby remain in business.

42.     VPX has suffered and will continue to suffer irreparable harm as a consequence of PepsiCo's wrongful assertions of rights under the Distribution Agreement, including diminished customer goodwill and irrevocable harm to its BANG® brand.

43.     Such harm cannot be fully addressed by awarding monetary damages.

44. The harm to VPX in the absence of injunctive relief precluding PepsiCo's wrongful assertion of rights under the Distribution Agreement greatly outweighs any purported harm to PepsiCo if the injunction is granted.

45. The public interest supports an injunction because the public interest is disserved by a party improperly asserting rights it does not hold.

46. A declaration will lessen the financial and other burdens incurred by VPX, as well as the irreparable harm to VPX's goodwill.

47. VPX has no adequate remedy at law for the foregoing present and threatened future irreparable harm.

**WHEREFORE,** VPX respectfully requests that the Court grant VPX the following relief:

A. A judicial declaration that:

1. PepsiCo has not performed the services it is required to under Schedule 6 of the Distribution Agreement;

2. PepsiCo is not entitled to a Mixing Center Fee or ▬▬▬▬

B. A preliminary and permanent injunction enjoining PepsiCo from threatening to withhold access to its mixing centers;

C. VPX's attorneys' fees and costs; and

D. All such other, further relief as the Court deems just and proper.

Dated: April 11, 2022.                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 */s/Jeffrey Wolf*
　　　　　　　　　　　　　　　　　　　　　　Jeffrey H. Wolf (# 011361)
　　　　　　　　　　　　　　　　　　　　　　Quarles & Brady LLP
　　　　　　　　　　　　　　　　　　　　　　Renaissance One
　　　　　　　　　　　　　　　　　　　　　　Two North Central Avenue
　　　　　　　　　　　　　　　　　　　　　　Phoenix, AZ 85004-2391
　　　　　　　　　　　　　　　　　　　　　　jeffrey.wolf@quarles.com

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*